No. 47,631

STATE OF KANSAS, *Appellee,* v. GARY DEAN GOBIN, *Appellant.*

(531 P. 2d 16)

Opinion filed January 25, 1975.

*Donald E. Shultz,* of Shultz & Shultz, Chartered, of Dodge City, argued the cause and was on the brief for the appellant.

*B. A. Lightfoot,* county attorney, argued the cause, and *Vern Miller,* attorney general, and *Larry L. Hapgood,* assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The appellant, Gary Dean Gobin, was charged and convicted of an attempt to steal swine belonging to Everett Webb of a value of more than $50.00. One of the points raised on appeal concerns the sufficiency of the evidence to establish both the specific criminal intent and the overt act necessary to consummate such a felony.

The evidence established that on December 2, 1973, at 10:20 p. m., Mr. Webb arrived at his swine farm near Jetmore, Kansas to check his hogs. A dead end graveled road led from the highway to a private driveway at the farm. The swine were confined in far-rowing houses and in fattening pens located along this private drive-way. When Mr. Webb drove into the yard using the private drive-way, he saw two people sitting in a pickup truck, equipped with stock racks, parked at the other end of the driveway. He stepped from his car, and the pickup truck sped past him and left the prem-ises. Webb pursued the pickup in his car and was able to obtain the license number during a three mile chase. Webb then drove to Jetmore and reported the incident to the sheriff's office. The pickup was registered in the name of a Mr. Gerald Smith. The sheriff parked his police car at a likely intersection which led to Dodge City and waited. Subsequently two vehicles approached the intersection, one was the pickup truck seen earlier near the swine pens. The sheriff managed to stop the pickup. The appellant Gobin was the sole occupant. The other vehicle was a large truck driven by Mr. Gerald Smith. Both Gobin and Smith were taken to Jetmore and charged with an attempt to exert unauthorized control over swine belonging to Webb, an attempted felony theft. At the time of the incident there were swine confined in the fattening pens and farrowing houses worth from $20.00 to $300.00 each.

The appellant Gobin excused his presence in the pickup on the driveway at the swine farm by explaining that he and his girlfriend were driving around in the pickup and decided to park in seclusion for a while. When questioned further he refused to give the name of this girlfriend. His explanation was not corroborated at the trial. There was other evidence introduced at the trial which indicated that Mr. Gobin had not been truthful concerning other statements made to the sheriff. However, we are here concerned more with the sufficiency of the state's evidence to establish the crime charged than the truthfulness of the accused.

On appellate review of a criminal trial the question is not whether the evidence establishes guilt of the defendant beyond a reasonable doubt, but whether the evidence is sufficient to form a basis for a reasonable inference of guilt on all elements of the crime. (*State v. McCollum*, 211 Kan. 631, Syl. ¶ 9, 507 P. 2d 196.) Before a verdict of guilty, which has been approved by the district court, may be set aside because of insufficient evidence, it must clearly be shown that

upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the district court. (*State v. Kelly,* 210 Kan. 192, Syl. ¶ 3, 499 P. 2d 1040.) In reaching that hypothesis this court will examine the record to determine if, from all of the facts and circumstances disclosed by the evidence, the jury could have reasonably drawn an inference of guilt. (*State v. Trotter,* 203 Kan. 31, Syl. ¶ 4, 453 P. 2d 93.) Presumptions and inferences may be drawn only from facts established and presumption may not rest upon presumption or inference on inference. (*State v. Doyle,* 201 Kan. 469, Syl. ¶ 8, 441 P. 2d 846.)

The Kansas Criminal Code defines an attempt as follows:

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." (K. S. A. 1973 Supp. 21-3301 [1].)

The code defines the particular theft charged as being attempted in the present case as follows:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:
"(*a*) Obtaining or exerting unauthorized control over property; . . ." (K. S. A. 1973 Supp. 21-3701.)

We note that in addition to the general criminal intent mentioned in K. S. A. Supp. 21-3201 (2), the acts of theft proscribed by 21-3701 must be done with intent to deprive the owner permanently of the possession, use or benefit of particular property.

To "deprive permanently" as defined in the general definitions section of the code means:

"Take from the owner the possession, use or benefit of his property, without an intent to restore the same; . . ." (K. S. A. 1973 Supp. 21-3110 [6] [*a*].)

So it becomes apparent from the foregoing that the specific intent which must be established under the present charge of theft is an intent to take from the owner the possession, use or benefit of his property ($50.00 worth of swine) without an intent to restore the same.

Next let us consider the type of an overt act necessary to support an attempt to commit any crime. The essential elements to establish an attempt have been repeatedly set forth in our cases, the most recent of which is *State v. Cory,* 211 Kan. 528, 506 P. 2d 1115, where it is said:

". . . K. S. A. 1972 Supp. 21-3301 still contains three essential elements

(1) the intent to commit the crime, (2) an overt act toward the perpetration of the crime, and (3) a failure to consummate it. . . ." (p. 532.)

The comment of the committee on pattern jury instructions covering attempts is:

"A problem inherent in the law of attempts concerns the point when criminal liability attaches for the overt act. On the one hand mere acts of preparation are insufficient while, on the other, if the accused has performed the final act necessary for the completion of the crime, he could be prosecuted for the crime intended and not for an attempt. The overt act lies somewhere between these two extremes and each case must depend upon its own particular facts. . . ." (PIK Criminal 55.01, p. 105.)

In support of this comment the following cases are cited: *State v. Davis*, 199 Kan. 33, 427 P. 2d 606; *State v. Borserine*, 184 Kan. 405, 377 P. 2d 697; *State v. Visco*, 183 Kan. 562, 331 P. 2d 318; *State v. Bereman*, 177 Kan. 141, 276 P. 2d 364; and *State v. McCarthy*, 115 Kan. 583, 224 Pac. 44. We might add to the list: *State v. Cory*, supra; and *State v. Thompson*, 118 Kan. 256, 234 Pac. 980.

It becomes apparent from reading the foregoing cases that no definite rule as to what constitutes an overt act for the purposes of an attempt can or should be laid down. Each case must depend largely on its partciular facts and the inferences which the jury may reasoniably draw therefrom. The problem should be approached with a desire to accomplish substantial justice. It has been said that mere preparation is not sufficient. The accused must have taken steps beyond mere preparation by doing something directly moving toward and bringing nearer the crime he intends to commit. It is sometimes said there must be some appreciable fragment of the crime committed. In 22 C. J. S., Criminal Law, § 75 (3), pp. 233, 234, it is stated:

"To convict one of an attempt to commit a crime, it is necessary that the overt act have been done with the actual intent to commit that particular crime. Such intent must be an intent in fact as disinguished from an intent in law, and cannot be implied as a matter of law from the existence of the same facts and circumstances which would, in case the deed had been accomplished, have furnished conclusive evidence of an intention to commit the substantive crime. . . ."

In 21 Am. Jur. 2d, Criminal Law § 111, p. 191, it is said:

". . . In a general way it may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made. It has been held that even though a person actually intends to commit a crime, his procurement of the instrumentalities

adapted to that end will not constitute an attempt to commit the crime in the absence of some further overt act. . . ."

From the foregoing it appears that in order to convict an accused of an attempt to commit a crime an overt act toward consummation of the crime must be established. The overt act necessary must extend beyond mere preparations made by the accused and must approach sufficiently near to consummation of the offense to stand either as the first or some subsequent step in a direct movement towards the completed offense.

Now let us look at our cases on the subject to see where that line has been drawn. In *State v. McCarthy,* supra, the charge was an attempt to commit burglary of a freight car. There was no question of the intent to commit the burglary for the accused explained his plan to a car inspector who agreed to hold the particular train to be robbed long enough for the goods to be removed. The accused and four confederates arrived at the yards in a car and a truck with a pump gun, revolver, ammunition, lanterns, wrenches, screwdriver and a jimmy. Three of the party remained near the scene of their contemplated burglary where they were later arrested. Two went in search of their supposed accomplice, the car inspector. The car inspector testified that the defendant talked with him on the steps of the station and advised that the others were waiting with their vehicles. The accused then left and was arrested a few blocks from the station. The court on appeal concluded that the acts of the defendants went beyond mere preparation for an intended burglary and were steps toward the accomplishment of the crime which justified conviction of an attempt. We note that the overt acts were not necessary to establish an intent to commit the burglary. The accused's intent to commit the crime was independently proven by the testimony of the car inspector.

In *State v. Thompson,* supra, the accused was charged with attempting to assist certain persons in an escape from jail. The accused secured loaded weapons, arranged with another person, who had access to the prisoners, to deliver the weapons to the men in jail and the weapons were actually delivered by the accused to the person having access. An agreement had been made to pay him $500.00 if the weapons were delivered to the prisoners. Again there was no question concerning proof of the intent to assist prisoners to escape. It was established by the testimony of the person having access to the prisoners to whom the weapons were actually delivered.

In *State v. Bereman,* supra, the accused was charged with an attempt to commit the crime against nature (G. S. 1949, 21-907). No evidentiary background appears in the opinion. The court merely observes that the state developed some acts of solicitation but that the record was void of any evidence of an overt act on the part of the accused directed toward the commission of the offense charged. Dismissal of the case was affirmed.

In *State v. Visco,* supra, and *State v. Borserine,* supra, Visco and Borserine joined in an attempt to obtain money by false pretenses from a Mr. McEndree. There were separate trials and appeals. The intent to commit the crime rested on the testimony of co-conspirators. The overt acts charged were false representations of agency made to the intended victim under the guise of selling a publication which did not exist. The acts clearly went beyond preparation and involved the intended victim. Further details of the conspiracy would not be particularly helpful for our purposes.

In *State v. Davis,* supra, the accused was charged with an attempt to escape from the reformatory. He had failed to appear for a customary head count and had been missing for more than 24 hours. He was discovered hiding on the grounds of the reformatory under an enclosed wooden platform. The accused and a confederate had a case knife and a steel file on their persons. Other articles of contraband were found in the hiding place. On appeal this court held an intent to escape was clearly indicated by the evidence and that the acts of hiding and collecting articles of contraband were more than mere preparation. The escape had been initiated and was in progress. The necessary elements of an attempt had been established.

In *State v. Cory,* supra, the accused was charged with an attempted burglary. He was arrested in an alley behind a jewelry store at night after the store's burglar alarm had sounded. The tools necessary to break and enter were nearby and one of the bars protecting the rear window of the jewelry store had been cut, the window had been raised and was held open by a crowbar. No question was raised in the appeal concerning the sufficiency of the evidence to sustain an alleged attempt. The accused merely denied taking part in the attempt and claimed he was an innocent victim of circumstances.

In the present case appellant was charged with an attempt to take swine from Webb. There was convincing evidence that the two

persons sitting in the pickup in the driveway never departed from the vehicle. The yard surrounding the vehicle had been freshly dragged and there were no imprints on the surrounding surface except the car and pickup tracks. Mr. Webb testified the pickup was parked 90 feet from the loading chute.. A man could have loaded a pig weighing up to 75 pounds without using a chute. The pickup was some distance from both the farrowing houses and the fattening pens. Mr. Webb further testified neither of the persons in the pickup made any movement toward the animals while he was there and that he heard no noise from the swine to indicate that any had been disturbed or lifted. There were no swine in the pickup.

Under such a factual situation there may have been sufficient circumstances, if you include the flight of the pickup, to infer a general unlawful and criminal intent but there are no facts which point to a specific intent to steal swine. The presence of a strange pickup with stock racks in a private driveway at 10:20 p. m. might well raise a strong suspicion of wrongdoing but its presence and subsequent flight alone does not point to any particular crime intended. The facts are equally susceptible to widely different interpretations, for the known circumstances might be attributable to either an innocent or a criminal cause. Flight alone is of such a nature that the jury could reasonably infer only a general criminal intent, not a specific criminal intent to steal pigs.

Similarly when we look for an overt act done in an effort to steal the swine the facts and circumstances surrounding the presence of the strange pickup in the driveway are equally susceptible of widely different interpretations. The known circumstances are attributable to either innocent acts or criminal acts in preparation for some crime, possibly theft of pigs or grain or gasoline or equipment. For a felony theft it would have to be inferred that the accused intended to steal at least $50.00 worth of said swine.

Therefore it appears that if this conviction for an attempt to steal swine is upheld both the criminal intent to steal $50.00 worth of swine and the overt act toward the consummation of that theft must be inferred from the presence of two persons in a strange pickup with stock racks parked at 10:20 p. m. in a private driveway between farrowing houses and swine fattening pens.

Presumptions and inferences may be drawn only from facts established. Presumption may not rest upon presumption or inference

on inference and as stated in *State v. Doyle,* supra, the rule is doubly applicable in criminal cases. This court concludes from all of the facts and circumstances disclosed by the evidence, the jury could not have reasonably drawn a proper inference that the appellant attempted to take from Mr. Webb swine worth over $50.00 with intent to deprive him permanently of the possession, use or benefit of said property. A felony conviction for an attempt to steal swine must be grounded on something more than probabilities, possibilities or suspicions of guilt.

Because of the decision we have reached it becomes unnecessary for us to discuss other points raised on appeal. The judgment of conviction is reversed.

FONTRON, J., dissenting: While I acknowledge the validity of the legal principles set forth in the court's opinion, I arrive at a different destination in applying them to the facts of this case than does the majority. In simple language, I maintain there is sufficient evidence of record to justify a reasonable inference that Mr. Gobin and Mr. Smith, with Smith's two trucks in tow, drove from Dodge City to Everett Webb's pig farm north of Jetmore, a distance of some 35 miles, for the express purpose of pilfering pigs. The driving of the trucks that distance and to that place appears to me as being more than mere preparation; it was, as I see it, an overt act; the first in a series of active moves which would have led directly to consummation of a theft had not the owner fortuitously driven to the farm to shut the door to the farrowing house. The readying of the trucks and stock racks for the journey might well be termed preparation but driving the pickup into a private driveway leading from a dead-end road smack into "the middle of the hog lot" as Mr. Webb put it, at 10:20 p. m. and parking there is more, in my books, than preparation. It is an outward, open manifest act. Neither Mr. Gobin nor Mr. Smith could have "exercised unauthorized control" over the pigs in Mr. Webb's hog lot that night had they remained in Dodge City; they first had to get themselves and the trucks to the pig lot, and that required a moving, purposeful, motivated act.

I find little difficulty in saying the evidence was such that an intent to exert "unauthorized control", or to steal, in other words, might well have been inferred by the jury. The hasty flight of the two men followed by a "cops and robbers" chase of the two trucks

over the highways of Hodgeman County belies an honest purpose on their part in parking at the hog lot. Both a rifle and a revolver —hardly innocent toys—were found in the pickup, as were a check book and wallet belonging to Smith. A number of statements made by Gobin that night were evasive if not downright untruthful. For example, Gobin said he was with his girl friend whereas Mr. Webb saw two "gentlemen" in the pickup parked on the driveway, not a pair of cuddly lovers.

The court indicates concern over the question of value—that is, may an attempt be inferred to steal $50 worth of hogs? There is evidence that the smallest pig in the lot was worth $20 and I find it not unreal to assume an intent on the part of Gobin to appropriate at least a pickup truck load of pigs, if not more.

One further fact may be noted as having a bearing on intent. A search of Gobin's premises turned up two or three pigs, or possibly more, although Gobin had told the Hodgeman sheriff he had not had any pigs for over a year. It would appear he was in the pig business.

For the reasons assigned I respectfully dissent from Syllabus 4 and from corresponding parts of the opinion.

FATZER, C. J., joins in the foregoing dissent.