No. 55,375

STATE OF KANSAS, *Appellee,* v. JOSEPH WILLIAM CANTRELL,
*Appellant.*

(673 P.2d 1147)

Opinion filed December 2, 1983.

*Randolph G. Austin* and *Mary Stuckey Cofran,* of Speer, Austin, Holliday, Lane & Ruddick, of Olathe, argued the cause and were on the brief for appellant.

*Larry McClain,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Joseph William Cantrell appeals from his conviction by a jury of one count of rape. K.S.A. 21-3502. The appellant raises several points of alleged error in the trial court proceedings and also asserts there was insufficient evidence to support the conviction. After carefully considering all points we affirm the conviction.

The first point to be considered is whether there was sufficient evidence to support the conviction. Appellant did not deny that he had sexual intercourse with the victim, Mrs. B., on the night of April 26, 1982. Mrs. B., a divorcee and a resident of Colorado had been visiting a friend, Jackie Larson, in Kansas City, Missouri.

On Sunday, April 26, 1982, they went shopping in the Plaza area of Kansas City and late in the afternoon started visiting various restaurants and bars. Early in the evening they met John Mullane, an acquaintance of Miss Larson, at the Bristol Bar and Grill. Mullane introduced the two ladies to several people including Joseph Cantrell. Mrs. B. had some conversation with Cantrell at that time although he left the bar shortly thereafter. Later in the evening Mrs. B., Jackie Larson and John Mullane left the Bristol to go to Plaza III, another bar in the area. On the way they encountered Joseph Cantrell who was walking to his car to go home. Jackie Larson asked him to join them and he did. The group stayed at Plaza III until closing time, which was around 11:45 p.m., and then decided to go to the Clarette Club in Johnson County, Kansas, to continue their evening of drinking and dancing. It was decided that Mrs. B. would ride with Cantrell and Larson would ride with Mullane, and they would then meet at the Johnson County club.

On the way to the Clarette Club, Cantrell pulled off onto a side street where the alleged rape took place in the front seat of his El Camino truck. Appellant contends the sexual intercourse was consensual while Mrs. B. contends it was rape. It would serve no useful purpose to detail the two versions of the event. Suffice it to say Mrs. B. testified that she resisted and struggled with the defendant; that she was crying; and that she begged the defendant to stop, although she admitted that he made no threats, did not strike her, had no weapon and did not curse her or raise his voice. Her clothes were not ripped or torn and she suffered no bruises or other evidence of trauma. She made no attempt to scream, honk the horn or leave the vehicle. Upon completion of the act, the two proceeded on to the Clarette Club where they joined John Mullane and Jackie Larson. Mrs. B. told Jackie Larson that she had been raped by defendant. Mrs. B., Larson and Mullane then left the club and Mrs. B. and Larson returned to Larson's home at which time they contacted the police.

K.S.A. 21-3502 (amended L. 1983, ch. 109, § 2) provided:

"(1) Rape is the act of sexual intercourse committed by a man with a woman not his wife, and without her consent when committed under any of the following circumstances:

(a) When a woman's resistance is overcome by force or fear;

(b) When the woman is unconscious or physically powerless to resist; or

(c) When the woman is incapable of giving her consent because of mental

deficiency or disease, which condition was known by the man or was reasonably apparent to him; or

(d) When the woman's resistance is prevented by the effect of any alcoholic liquor, narcotic, drug or other substance administered to the woman by the man or another for the purpose of preventing the woman's resistance, unless the woman voluntarily consumes or allows the administration of the substance with knowledge of its nature.

(2) Rape is a class B felony." (Emphasis added.)

In the instant case the charging instrument stated "when her resistance was overcome by force *and* fear" rather than force *or* fear. As a result the trial court instructed the jury that they must find the victim's resistance was overcome by both "force and fear."

In considering the sufficiency of the evidence, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Matlock,* 233 Kan. 1, 660 P.2d 945 (1983). In *State v. Sanders,* 227 Kan. 892, 610 P.2d 633 (1980), we held:

"The testimony of the prosecutrix need not be corroborated to sustain a conviction for rape in this state; there may be a conviction on the uncorroborated evidence of the prosecutrix if it is believed by the jury." Syl. ¶ 2.

While the evidence in this case is not strong on the element of overcoming the resistance of the victim, we have concluded that the testimony of Mrs. B. was sufficient to meet the test set forth in *Matlock.* Her testimony that she physically resisted the defendant is clear and the jury could have concluded from her actions that her resistance was also overcome by fear. See *State v. Hacker,* 197 Kan. 712, 421 P.2d 40 (1966), *cert. denied* 386 U.S. 967 (1967). The jury had the opportunity to view the witnesses and to hear the evidence and evidently believed the testimony of Mrs. B. rather than that of the defendant.

Appellant's next point on appeal is that the trial court erred in refusing to strike the testimony of Mrs. B. as she had violated the court's sequestration order. The court, at defendant's request, had entered a sequestration order which the prosecutor failed to relay to his witnesses. During the evening, after the first day of trial, Mrs. B., who had not yet testified, discussed the case with her friend Jackie Larson, who had testified that day. On cross-examination defense counsel discovered this violation, and im-

mediately moved to strike the prosecutrix' direct testimony and to prevent her from testifying further. The prosecutor responded that his failure to inform the witnesses of the court order was inadvertent, and as the victim had previously testified at the preliminary hearing her testimony was "locked in," resulting in no prejudice to the defendant. The court reserved its ruling on defendant's motion, excused the jury, and permitted counsel to inquire of the witness as to the scope of the actual communication. After hearing her testimony the judge read the transcript of the preliminary hearing and concluded:

"[T]here has been no substantial variance nor material alteration of testimony in this matter. That, if anything, the witness' testimony at trial is, as might be anticipated, less detailed than the testimony presented at preliminary hearing.

"The Court finds only the most minor of variances from the testimony earlier given at preliminary hearing. I have made a few notes of minor time variances that appear from the preliminary hearing to the trial of the case and trial testimony. Obviously, simple time discrepancies, unless time is a critical factor, [are] of no great consequence.

"I have reviewed with particular interest necessarily the witness' testimony about the precise actions, statements, etc., that relate to the parked car or parked Camino episode which, of course, the Court must view as the critical time element involved in the matter and whether or not any variance of a substantial matter occurred in that precise area.

"The Court finds virtually no variance in that testimony. Any variance that there is in terms of trial testimony as opposed to preliminary hearing in the Court's view inures to the defendant's benefit rather than detriment because it is, in the Court's view, substantially less detailed.

"The Court necessarily then finds that no prejudice has resulted to the defendant from the communication of whatever nature and, of course, that has been permitted to be explored by counsel by examining the principal witness, [Mrs. B] in open court outside the presence of the jury and following counsel's very proper objection."

The jury was called back into court, and defense counsel, on further cross-examination of Mrs. B., fully explored the two witnesses' conversation and any discrepancies in the victim's pretrial and trial testimony.

The well-established rule in Kansas is that violation of a court order separating witnesses does not of itself disqualify a witness from testifying, and the trial court in its discretion may permit the witness to testify. *State v. Blocker*, 211 Kan. 185, 505 P.2d 1099 (1973); *State v. Edwards*, 209 Kan. 696, 498 P.2d 53 (1972); *State v. Henderson*, 205 Kan. 231, 468 P.2d 136 (1970); *State v. Trotter*, 203 Kan. 31, 453 P.2d 93 (1969); *Barber v. Emery*, 101

Kan. 314, 167 Pac. 1044 (1917); *State v. Falk*, 46 Kan. 498, 26 Pac. 1023 (1891); *Davenport v. Ogg*, 15 Kan. 363 (1875). We find no abuse of discretion in the court's ruling.

Before leaving this point, however, we pause to note our increasing concern over the number of inadvertent failures of attorneys to communicate sequestration and separation orders to their own witnesses. See *State v. Handley*, 234 Kan. 454, 673 P.2d 1155 (1983). In the present case, the trial judge addressed the following remarks to the prosecutor:

"I will instruct you that in the future it is my view that as an officer of the Court you do have an affirmative obligation, even without direction specifically by the Court, to admonish witnesses that you anticipate calling for trial in advance of that testimony as to any restrictions upon their discussions that the Court has seen fit to impose."

We emphatically agree. We have previously recognized that any person violating a separation order could be punished therefor by contempt, although the admission of the testimony is generally proper unless a party to the action participated in the guilt of the witness. *State v. Carney*, 216 Kan. 704, 709-10, 533 P.2d 1268 (1975). In certain instances contempt proceedings against an attorney for failing to properly advise the witnesses of a sequestration order may be an appropriate sanction.

Appellant's final contention is that the trial court erred in failing to instruct on the requisite felonious intent under K.S.A. 21-3502. We note at the outset that defendant lodged no objections to the instructions and unless the instructions given were clearly erroneous appellant may not now claim error. K.S.A. 22-3414(3); *State v. Jones*, 233 Kan. 112, 115, 660 P.2d 948 (1983).

The instructions submitted to the jury included the following:

"Instruction No. 10. In order for the defendant to be guilty of the crime charged the State must prove beyond a reasonable doubt that his conduct was intentional. Intentional means willful and purposeful and not accidental.

"Intent, or lack of intent, is to be determined or inferred from all of the evidence in the case.

"Instruction No. 11. The defendant is charged with the crime of rape. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved.

1. That the defendant had sexual intercourse with [Mrs. B.];

2. That [Mrs. B.] was not the defendant's wife;

3. That the act of sexual intercourse was committed without the consent of

[Mrs. B.] under circumstances when her resistance was overcome by force and fear; and

4. That this act occurred on or about the 26th day of April, 1982, in Johnson County, Kansas."

The State also points to Instruction No. 9, which was an expanded version of PIK Crim. 2d 54.01, as bearing on defendant's intent, but that was only the standard "natural and probable consequence" instruction which is solely evidentiary in nature. See Notes, PIK Crim. 2d 54.01.

Appellant contends these instructions are clearly erroneous, asserting rape is a specific intent crime, relying on *State v. Gonzales*, 217 Kan. 159, 161, 535 P.2d 988 (1975), and the following quote from *State v. Hampton*, 215 Kan. 907, 529 P.2d 127 (1974):

"Either the use of force or the use of overbearing fear is a necessary ingredient of the offense of rape. The sexual act must be committed against the will and without the consent of the woman; her resistance must be overcome. Thus it is that the intent with which a marauding male approaches a member of the opposite sex in seeking sexual gratification becomes important. Is it his intent to satisfy his lust at any cost, that is, against the lady's will and by overcoming her resistance, or is it simply to find an accommodating partner? If the first be his intent, and the sexual act is accomplished by destroying resistance, the statute has been violated. On the other hand, if it be his intent merely to cajole the lady into acquiescence, and he is successful, intercourse is on a mutually enjoyable basis, and rape, it is not." 215 Kan. at 909.

In *Gonzales* the defendant was charged with rape and one of the questions before the court was the admission of evidence of other similar offenses under K.S.A. 60-455. The evidence was admitted for the limited purpose of showing intent, motive and plan of operation. The majority of this court, in reliance upon *Hampton*, concluded the other crimes evidence was admissible. Justice Prager, in his dissent, stated:

"A defendant's specific intent is not a genuine issue in a rape case. Other crimes evidence offered to prove intent, where intent is not substantially in issue, amounts to no more than showing the defendant's disposition or inclination for bad conduct. This is clearly impermissible under the statute and our case law. (*State v. Cross*, 216 Kan. 511, 532 P.2d 1357.) In the present case evidence of the defendant's prior odious sexual conduct had no bearing on the matters in issue. In a rape case the burden is on the state to prove that the female victim was overcome by force and subjected to sexual intercourse without her consent. It is *her* intent and state of mind which is of supreme importance. If the defendant voluntarily committed the act of forcible sexual intercourse his specific intent is immaterial. Defendant's prior offenses have no probative value on the question of the victim's consent." 217 Kan. at 162.

In *State v. Carr,* 230 Kan. 322, 327, 634 P.2d 1104 (1981), the defendant was convicted of aggravated burglary and attempted rape and among his claims on appeal was that there was insufficient evidence to establish his specific intent to commit the crimes. A majority of the court reversed the convictions stating:

"As in *State v. Gobin,* 216 Kan. 278, 284, 531 P.2d 16 (1975), one might infer 'a general unlawful and criminal intent' but not a specific intent to rape. Admittedly, defendant's presence in the bedroom presents a closer case than *Gobin* but, even assuming that presence, which was disputed at trial, defendant was fully clothed in a room light enough that a person could have seen two figures in the bed. Finding the evidence insufficient to support the intent to commit rape which is necessary to the charge of attempted rape, that conviction must be reversed. Since attempted rape is the felony on which the charge of aggravated burglary is predicated, defendant's conviction for aggravated burglary must also be reversed." 230 Kan. at 327.

Thus it appears that on occasion the court has indicated that rape is a specific intent crime.

K.S.A. 21-3201(1) states:

"Except as provided by sections 21-3202, 21-3204, and 21-3405, a criminal intent is an essential element of every crime defined by this code. Criminal intent may be established by proof that the conduct of the accused person was willful or wanton. Proof of willful conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a wanton manner."

The distinction between a general intent crime and a crime of specific intent is whether, in addition to K.S.A. 21-3201, the statute defining the crime in question identifies a further particular intent which must accompany the prohibited acts. In the context of theft this distinction was made in *State v. Gobin,* 216 Kan. 278, 531 P.2d 16 (1975), where we said:

"We note that in addition to the *general criminal intent* mentioned in K.S.A. 1973 Supp. 21-3201(2), the acts of theft proscribed by 21-3701 must be done *with intent to deprive the owner permanently of the possession, use or benefit of particular property.*

"To 'deprive permanently' as defined in the general definitions section of the code means:

'Take from the owner the possession, use or benefit of his property, without an intent to restore the same; . . .'

(K.S.A. 1973 Supp. 21-3110[6][a].)

So it becomes apparent from the foregoing that the *specific intent* which must be established under the present charge of theft is an intent to take from the owner the possession, use or benefit of his property ($50.00 worth of swine) without an intent to restore the same." (Emphasis added.) 216 Kan. at 280.

In *State v. Clingerman*, 213 Kan. 525, 516 P.2d 1022 (1973), involving a conviction of first-degree robbery, the court stated:

"The elements of intent required for various statutory crimes vary according to the particular crime. Where intent is a required element of the crime it must be included in the charge and in the instructions of the court covering the separate elements of that particular crime. (*State v. Carr*, 151 Kan. 36, Syl. ¶ 5, 98 P.2d 393.)" 213 Kan. at 530

In *State v. Cruitt*, 200 Kan. 372, 436 P.2d 870 (1968), a prosecution for blackmail under K.S.A. 21-2412 (Corrick) (repealed 1970), the court stated the rule as follows:

"We agree with the defendant that where the Legislature expressly refers to intent and makes it an essential element of a statutory offense, such intent must be alleged in the information.   .   .   .

"On the other hand, it has been repeatedly held that the Legislature has the power to forbid the doing of an act and make its commission criminal, without regard to the intent or knowledge of the doer. [Citations omitted.] And where an act is made a crime by statute, without any express reference to intent, this court has held that it is not necessary to allege such intent, or any intent, but simply to allege the commission of the act in the language of the statute, and the intent will be presumed. (Citations omitted.)" 200 Kan. at 374-75.

Rape as defined in K.S.A. 21-3502 does not require as one of the statutory elements of the offense a specific intent on the part of the defendant to commit rape and therefore there is no necessity to instruct on such a specific intent. We conclude that Justice Prager's comments in his dissent in *Gonzales* correctly state the law on this question. Language to the contrary in *Hampton* and *Carr* is hereby overruled. Having concluded that rape is not a crime of specific intent, the instructions given were not clearly erroneous and appellant's point lacks merit.

Appellant's final contention is that if rape is not a specific intent crime requiring an instruction on that intent, then K.S.A. 21-3502 is unconstitutionally vague. In *State v. Huffman*, 228 Kan. 186, 612 P.2d 630 (1980), we set forth some principles to be followed in such a challenge. We held:

"This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." Syl. ¶ 1.

"The test to determine whether a criminal statute is unconstitutionally vague and indefinite is whether its language conveys a sufficiently definite warning as

to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Syl. ¶ 5.

Appellant argues that without requiring instructions that defendant was aware of the victim's resistance and intended to engage in intercourse despite that resistance, men of ordinary intelligence might well differ as to the meaning and application of the acts prohibited by K.S.A. 21-3502. We disagree. The statute is clear, readily understandable by persons of common intelligence and as such was constitutional.

The judgment is affirmed.