NOT DESIGNATED FOR PUBLICATION

No. 127,820

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KYLE R. BELTZ,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed December 26, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM: Kyle R. Beltz is convicted of one count of first-degree felony murder and one count of attempted possession of marijuana with intent to distribute and is serving a controlling sentence of life imprisonment without parole for 20 years. He now appeals the district court's summary denial of his second K.S.A. 60-1507 motion. Beltz claims on appeal as he did in district court that he is actually innocent based on newly discovered evidence, and that he received ineffective assistance of counsel from his district court counsel and appellate counsel in his prior K.S.A. 60-1507 case. For reasons explained below, we affirm the district court's judgment in part but remand for

further proceedings on one claim that Beltz received ineffective assistance of appellate counsel in his prior K.S.A. 60-1507 case.

FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding Beltz' convictions were summarized by the Kansas Supreme Court in his direct appeal:

"Ronald Betts suffered multiple gunshot wounds during a botched drug deal, which resulted in his death. A jury convicted Betts' partner, Kyle Beltz, of felony murder for Betts' death during the attempted drug sale. Betts knew and was on good terms with both Beltz and Beltz' girlfriend, Kelly Touchton. Beltz and Touchton lived together, and Betts would occasionally use their home—which contained a marijuana grow operation—and the adjacent parking lot as a staging ground to sell marijuana.

"On April 17, 2013, another acquaintance of Betts, Kyler Carriker, sent a text message to Beltz telling him that he wanted to purchase marijuana. Beltz put Carriker in touch with Betts, and the deal was set to occur the following day outside the Beltz/Touchton residence. Betts' wife, Jennifer, testified that on April 18, 2013, Betts left their house saying he was going to Beltz' home to meet some people and make a deal. She stated that she saw the marijuana Betts took to sell that night.

"Touchton testified that at around 6 or 7 p.m. on April 18, Beltz and Carriker left the Beltz/Touchton residence to run an errand in Carriker's truck. While they were gone, Betts arrived at the house. Touchton let Betts inside and went down to the basement to organize her art supplies. Later that evening, Touchton heard her dogs barking and returned to the main floor to investigate the cause. She saw Betts and Carriker come in the front door with three men she did not recognize, who were later identified as Lorenzo Spires, Dennis Haynes, and John Carter. She did not see Beltz. Touchton assumed Betts and Carriker were conducting a drug deal with the three unknown men, and she noticed that everyone was 'acting so stiff.' Touchton knew that Carriker and Betts each carried a gun and that Beltz kept a shotgun in the house.

"When Touchton went to the kitchen to get some ice, she heard several high-pitched gunshots and fell to the ground beside the refrigerator. She heard both the high-pitched gunshots and the sound of a shotgun firing. Shortly thereafter, Touchton saw one

2

of the three strangers enter the kitchen and point a gun at her. She heard a click and saw the man leave the kitchen. The man eventually returned and pulled her away from the back door, saying 'move, bitch.' Touchton crawled to the bathroom and hid until the firing ceased.

"When the gunshots stopped, Touchton heard Beltz call out for Carriker. She came out of hiding and saw Carriker lying on the bedroom floor bleeding from his leg. Carriker said they had shot him and taken his gun. Betts was lying motionless on the living room floor. Spires, Haynes, and Carter were gone. When Beltz told Touchton to call the police, Carriker fled the house.

"Touchton testified that Beltz later told her Carriker had met the men interested in purchasing the marijuana and Carriker had contacted him to ask where he could buy the drugs. Beltz then contacted Betts, putting him in contact with Carriker. Beltz told Touchton that it was a deal between Betts and Carriker and that it was supposed to happen in front of a store beside their house rather than inside the house. Beltz explained that his role was 'to look out for [Betts and Carriker] and make sure that they were okay, that they didn't get robbed or nothing went wrong.'

"Beltz told police that he had been in the master bedroom when the shooting began. Beltz then grabbed his shotgun and went to a closet that connected the master bedroom and the front bedroom. When someone looked into the closet from the front bedroom, Beltz fired twice in that direction and then stumbled or fell backwards into the master bedroom. When Beltz heard someone outside the room, he fired one shot at the door separating the master bedroom and the living room and retreated to hide by the bed.

"The forensic pathologist who conducted Betts' autopsy testified that Betts was shot five times. Of the three gunshot wounds that contributed to his death, two were caused by handguns and one was from a shotgun. The shotgun wound was located on Betts' upper left abdomen, and the pellets perforated areas of the body including the left kidney, spleen, and lower left lobe of the lung.

"A jury convicted Beltz of attempted possession of marijuana with the intent to distribute and first-degree felony murder for the killing of Betts during the attempted distribution of marijuana. The district court sentenced Beltz to a hard 20 life sentence for the felony murder and 67 months for the attempted distribution, running concurrently with the life sentence. Beltz appealed directly to this court." *State v. Beltz*, 305 Kan. 773, 773-75, 388 P.3d 93 (2017) (*Beltz I*).

The Kansas Supreme Court affirmed Beltz' convictions and the mandate issued on February 28, 2017. 305 Kan. at 784; see *Beltz v. State*, No. 122,880, 2021 WL 2879620, at \*2 (Kan. App. 2021) (unpublished opinion) (*Beltz II*). One issue raised by Beltz in his direct appeal was that the trial court erred by allowing evidence to be admitted under K.S.A. 60-455, but the Supreme Court declined to address the merits of the claim because it was not preserved with a contemporaneous objection by Beltz' trial counsel. *Beltz I*, 305 Kan. at 776-77.

Beltz timely filed a K.S.A. 60-1507 motion in district court on December 15, 2017. The K.S.A. 60-1507 motion raised several claims including ineffective assistance of counsel, speedy trial violations, judicial misconduct, sufficiency of the evidence, and prosecutorial error. Beltz later moved to amend his motion to add a claim based on newly discovered evidence, supported by an affidavit from Kyler Winn, formerly Kyler Carriker, stating that Beltz tried to back out of the drug deal underlying his felony murder conviction. The district court held a preliminary hearing on the K.S.A. 60-1507 motion and granted Beltz' motion to amend, but it denied all claims including the amended claim based on newly discovered evidence. *Beltz II*, 2021 WL 2879620, at \*2-3.

Beltz appealed the denial of his K.S.A. 60-1507 motion, and his appellate counsel briefed only one claim that Beltz' trial counsel was ineffective for failing to object to the K.S.A. 60-455 evidence. This court observed that "Beltz does not renew on appeal any of the other claims he made in his K.S.A. 60-1507 motion including his amended claim of newly discovered evidence. Thus, he has waived any challenge to the district court's denial of the remaining claims in his K.S.A. 60-1507 motion." *Beltz II*, 2021 WL 2879620, at \*3. After addressing the single claim raised by Beltz on appeal, this court affirmed the district court's denial of the amended K.S.A. 60-1507 motion. 2021 WL 2879620, at \*5. The mandate was issued on April 7, 2022.

4

Beltz filed a second K.S.A. 60-1507 motion in district court on February 16, 2023. Beltz' motion alleged that he received ineffective assistance of counsel in his prior K.S.A. 60-1507 case from both his district court counsel, Christopher Garcia, and his appellate counsel, Kristen B. Patty. Beltz also renewed his claim of actual innocence, claiming he did not participate in the drug deal underlying his felony murder conviction. This claim was supported by another affidavit from Winn dated January 31, 2023. The affidavit stated that Winn had arranged for an old friend from high school to come to Beltz' home to purchase marijuana from Betts. When the friend showed up at Beltz' house with other men, Beltz became nervous and said that "he did not want them inside and did not want to partake in the transaction any longer, he had a bad feeling and didn't want it to happen." The affidavit also stated that "Kyle wanted no part and went to his room to avoid the situation. He was not at any point a 'lookout' that someone had suggested. He went to his room simply because he wanted no part of it and felt safer in his room."

Beltz attached his own affidavit to his motion stating that he discussed with his lawyer the possibility of calling Carriker as a witness at trial, but "once Kyler asserted his Fifth Amendment right to self-incrimination, there was nothing my lawyer could do." Beltz also filed a 19-page memorandum supporting his K.S.A. 60-1507 motion, more thoroughly discussing all the claims and arguments in his motion. The memorandum asserted that he could not call Carriker (now Winn) as a witness at trial because at the time of trial he was invoking his Fifth Amendment right against self-incrimination.

On March 7, 2023, without requesting or receiving a response from the State to Beltz' K.S.A. 60-1507 motion, the district court filed an order summarily denying the motion. The district court addressed Beltz' claims in bulk and found that Beltz could not show prejudice on any of his claims because the "[e]vidence of Beltz's involvement in the underlying drug deal was overwhelming." As to the newly discovered evidence, the district court found that "comparing this overwhelming testimony against the affidavit of

a codefendant (which, as pointed out earlier, is nowhere near exculpatory) would not be successful, regardless of what appellate counsel could have investigated or argued."

Beltz timely appealed the district court's judgment and asked the court to appoint counsel to represent him on appeal. The district court at first appointed Patty as appellate counsel but upon request by Beltz, the district court reappointed different counsel. After over a year had passed, the district court dismissed Beltz' appeal for failure to docket in a timely manner, but the district court later rescinded that order and reinstated the appeal. Our court allowed the appeal to be docketed out of time.

ANALYSIS

On appeal, Beltz claims the district court erred in summarily denying his K.S.A. 60-1507 motion. Beltz renews his arguments in district court that he received ineffective assistance of counsel from his district court and appellate counsel in his prior K.S.A. 60-1507 case. He also contends that the district court should not have summarily denied his claim of actual innocence based on the newly discovered evidence. The State asserts that the district court did not err in summarily denying Beltz' K.S.A. 60-1507 motion because the motion, files, and records of the case conclusively show he is not entitled to relief.

A district court has three options when handling a K.S.A. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citations omitted.]" *State v. Adams*, 311 Kan. 569, 577-78, 465 P.3d 176 (2020).

6

"'When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief.' [Citation omitted.]" *State v. Roberts*, 310 Kan. 5, 12, 444 P.3d 982 (2019). A movant has the burden to prove that an evidentiary hearing is warranted by making more than conclusory contentions and showing that an evidentiary basis exists or is available in the record. *Noyce v. State*, 310 Kan. 394, 398, 447 P.3d 355 (2019).

*Actual innocence claim based on newly discovered evidence*

Beltz asserts a claim of actual innocence. There are two types of actual innocence claims under Kansas habeas law. First, there are procedural claims that provide a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Beauclair v. State*, 308 Kan. 284, 298-99, 419 P.3d 1180 (2018). Procedural claims of actual innocence are not constitutional claims themselves, but they provide the movant with the opportunity to clear procedural hurdles such as untimeliness or successiveness that would prevent a court from reviewing the underlying constitutional claim on the merits. *Skaggs v. State*, 59 Kan. App. 2d 121, 135-36, 479 P.3d 499 (2020). Procedural claims of actual innocence arise under K.S.A. 2024 Supp. 60-1507(f)(2)(A) to establish manifest injustice. These claims succeed "only if the movant's claims for habeas relief are procedurally barred." 59 Kan. App. 2d at 136.

The second type of actual innocence claim is a substantive claim in which "a movant asserts a substantive claim of actual innocence—e.g., arguing that newly discovered evidence establishes a movant is actually innocent and requires a new trial." 59 Kan. App. 2d at 135. Substantive claims of actual innocence are typically brought in a motion for new trial under K.S.A. 22-3501(1).

This distinction between the two types of the claims matters because they are reviewed differently. A procedural claim falls under *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), and *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). *Skaggs*, 59 Kan. App. 2d at 135.

"Under the *Carrier* standard, an inmate seeking habeas relief is entitled to consideration of the merits of the motion if the inmate's claim of actual innocence establishes it is more likely than not that no reasonable juror would have convicted in light of new evidence. And because the question that jurors must answer in a criminal trial is whether a defendant is guilty beyond a reasonable doubt, the inmate's 'burden at the gateway stage is merely to demonstrate "that more likely than not any reasonable juror would have reasonable doubt."'" 59 Kan. App. 2d at 136.

Substantive actual innocence claims fall under *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). *Skaggs*, 59 Kan. App. 2d at 135. A different test applies to substantive claims:

"The two-part test for determining whether a new trial is warranted on the ground of newly discovered evidence requires a court to consider (1) whether the defendant has met the burden of establishing that the newly proffered evidence could not, with reasonable diligence, have been produced at trial and (2) whether the evidence is of such materiality that it would be likely to produce a different result upon retrial." *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012).

In district court, Beltz presented his actual innocence claim as "a colorable claim of actual innocence . . . brought under K.S.A. 2022 Supp. 60-1507(f)(2)(a)." Nowhere in his motion or memorandum in support did Beltz style his claim of actual innocence as arising from K.S.A. 22-3501(1). The district court also reviewed the actual innocence claim as a procedural component of Beltz' ineffective assistance of counsel claims and not as a standalone claim under K.S.A. 22-3501(1). The State argues on appeal that because Beltz only raises a procedural claim, this court should deny it because there is no

procedural hurdle that Beltz must overcome for his claims to be reviewed as is required for a procedural actual innocence claim to succeed.

If Beltz' claim is procedural, as Beltz asserted below and as the district court addressed, then it must accompany some claim of constitutional infirmity in prior proceedings and there must be some procedural bar to raising that constitutional infirmity now. *Skaggs*, 59 Kan. App. 2d at 135-36. Beltz alleges violations to his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, but he does not allege any procedural bar to those claims. Indeed, the State concedes and Beltz does not challenge that his second K.S.A. 60-1507 motion is timely as raised within one year of the mandate issuing in his first K.S.A. 60-1507 case. And Beltz' ineffective assistance of counsel claims against his first K.S.A. 60-1507 motion counsel have not and could not have been raised before, so they are not successive either. Thus, to the extent that Beltz raises a procedural claim, it must fail for the lack of any procedural hurdle prohibiting review of his constitutional claims. *Skaggs*, 59 Kan. App. 2d at 135-36.

As for a substantive claim, the State asserts that Kansas appellate courts have not recognized the existence of a free-standing substantive claim of actual innocence as a ground for relief under K.S.A. 60-1507, citing *Beauclair*, 308 Kan. at 297-302; *Skaggs*, 59 Kan. App. 2d at 135-38; and *Gray v. State*, No. 126,404, 2024 WL 4470885, at *3 (Kan. App. 2024) (unpublished opinion). Although it is correct that these decisions discuss the difference between procedural and substantive claims and that procedural claims arise under K.S.A. 60-1507(f)(2), there is no language in these decisions stating that a substantive claim of actual innocence cannot be brought in a habeas proceeding. See *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008) (addressing substantive claim of actual innocence brought under K.S.A. 60-1507 which the district court treated as a motion for new trial). Thus, we find that an inmate may bring a substantive claim of actual innocence in a habeas proceeding to be treated as a motion for new trial under K.S.A. 22-3501(1), providing the claim is brought in a timely manner.

But to whatever extent Beltz raises a substantive actual innocence claim, it fails. K.S.A. 22-3501(1) provides in pertinent part: "A motion for a new trial based on the ground of newly discovered evidence may be made within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case." The mandate in Beltz' direct appeal was handed down on February 28, 2017, so he had two years from that date to raise a substantive actual innocence claim under K.S.A. 22-3501(1). See *State v. Harris*, 249 Kan. 410, 413-14, 819 P.2d 1169 (1991) (finding the two-year clock runs at the conclusion of a defendant's direct appeal). Beltz filed his current K.S.A. 60-1507 motion on February 16, 2023. So even if that motion could be construed as a motion for new trial based on newly discovered evidence, it would be nearly four years untimely under the statute. But see K.S.A. 21-2512(a); *Haddock v. State*, 282 Kan. 475, 499, 146 P.3d 187 (2006) (noting that no time limit exists for motion for new trial based on forensic DNA testing under the statute).

Thus, Beltz' actual innocence claim based on newly discovered evidence brought in his second K.S.A. 60-1507 motion fails whether it is treated as a procedural or substantive claim. The district court did not err in summarily denying Beltz' K.S.A. 60-1507 motion to the extent that it alleged a claim of actual innocence based on newly discovered evidence. If a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*Ineffective assistance of counsel claims against Garcia*

In district court, Beltz alleged that he received ineffective assistance of counsel from his prior K.S.A. 60-1507 counsel in district court, Garcia. Beltz renews these claims on appeal. Although movants do not have a constitutional right to effective assistance of legal counsel on collateral attacks because they are civil, not criminal actions, Kansas provides a statutory right to counsel on collateral attacks under some circumstances.

10

K.S.A. 22-4506; *Stewart v. State*, 310 Kan. 39, 45, 444 P.3d 955 (2019). Once counsel has been appointed in a postconviction matter, the appointment should not be a useless formality, meaning that appointed counsel has a duty to provide effective representation. *Mundy v. State*, 307 Kan. 280, 295, 408 P.3d 965 (2018). The same test for evaluating ineffective assistance of counsel claims against trial counsel applies to ineffective assistance of counsel claims against counsel in a postconviction matter.

> "Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different." *State v. James*, 319 Kan. 178, 184, 553 P.3d 308 (2024).

As a threshold matter, the district court in its order addressed the ineffective assistance of counsel claims in bulk. In doing so, the district court mistakenly found that Beltz raised claims against "various appellate attorneys" rather than Garcia, who represented Beltz in district court, and Patty, Beltz' appellate counsel. Beltz does not claim on appeal that the district court failed to address any of his claims raised below, nor does the State raise the issue. Ultimately, the district court's findings that the "various appellate attorneys" were not ineffective applies to both Garcia and Patty despite mislabeling Garcia as an appellate attorney. And the district court plainly intended its order to cover multiple claims against both attorneys and not just Patty.

Beltz claimed below that Garcia failed to "investigate and gather more information to present to the District Court thereby giving rise of his claim of actual innocence." Beltz claimed that Garcia could have investigated more facts related to Winn's affidavit and Beltz' actual innocence claim, and if an investigation occurred, then the district court

11

"should have granted a hearing" thereby resulting in prejudice. The district court found that Belts failed to show prejudice in each ineffective assistance of counsel claim because there was no likelihood that the result of the prior K.S.A. 60-1507 denial would have been different regardless of what counsel "could have investigated or argued."

On appeal, Beltz does little to address each ineffective assistance of counsel claim specifically. Our review is limited to the arguments asserted in the brief. The following is Beltz' entire argument as to his ineffective assistance of counsel claims against Garcia:

"Mr. Beltz' position is that had post-conviction counsel Chris Garcia investigated Mr. Beltz' claim that the jail house evidence introduced by the State was incorrect or otherwise misstated or misrepresented, and had he produced that evidence by way of the recording or a transcript of same, at least preliminarily, then an evidentiary hearing could have been convened which would have allowed the Court to explore and resolve the contradictory evidence. Additionally, Mr. Beltz proffers that the additional investigative effort would have allowed Mr. Garcia to raise the sufficiency of the evidence claim, judicial and prosecutorial misconduct, which Mr. Beltz claims should have been raised in support of his ineffective assistance of trial and direct appellate counsel. In the Court of Appeals' decision in his first K.S.A. 60-1507 action, the Court notes that at the preliminary hearing post-conviction counsel 'offered extensive arguments to the district court, but the arguments focused on Beltz' motion to add the claim of newly discovered evidence and the effect that evidence would have on Beltz' felony murder conviction.' For these reasons, Mr. Beltz takes the position that Mr. Garcia's failure to sufficiently investigate and produce the recording or at least a transcript of the recording at the preliminary hearing was an ineffective performance and he was denied his Sixth Amendment Right to effective assistance of post-conviction counsel. Mr. Beltz proffers he was prejudiced by this ineffective performance because the lack of investigation kept the Court from being able to reach the merits of his newly discovered evidence claim by way of an evidentiary hearing."

Any other claims against Garcia asserted in district court in the K.S.A. 60-1507 motion or the memorandum supporting the motion that are not renewed on appeal are

waived or abandoned. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). As to the claims against Garcia that are being asserted on appeal, the State contends that Beltz "merely makes conclusory statements without the evidence in the record to support his assertions." We agree. Beltz does little more than conclude that some unspecified investigation would have led to some unspecified better results for unspecified reasons.

Beltz fails to explain what facts any additional investigation into Winn's affidavit in the first K.S.A. 60-1507 case would have uncovered and why or how those speculative discoveries would have had any likelihood of changing the outcome of the case. The closest Beltz' appellate brief comes to making a specific claim against Garcia is the confusing assertion that Garcia should have produced "a transcript of the recording [of the arguments] at the preliminary hearing" in district court, but Beltz fails to elaborate on how that action would have made any difference to the outcome of the proceedings. Beltz' arguments fail to raise a prima facie claim of deficient performance by Garcia, and he offers no more than unsupported conclusions and speculation to show prejudice. We conclude the district court did not err in summarily denying Beltz' K.S.A. 60-1507 motion to the extent that it alleged ineffective assistance of counsel claims against Garcia.

*Ineffective assistance of counsel claims against Patty*

Beltz' K.S.A. 60-1507 motion also raised ineffective assistance of counsel claims against Patty, his appellate counsel in his prior K.S.A. 60-1507 case. On appeal, Beltz asserts that Patty was ineffective "because she failed to brief the newly discovered evidence and failed to brief various ineffective assistance of counsel claims, including the fact the State committed prosecutorial misconduct." Again, any claims made against Patty in district court but not renewed on appeal are waived. *Gallegos*, 313 Kan. at 277.

The test for effectiveness of appellate counsel is the same as for trial counsel. A defendant claiming ineffective assistance of appellate counsel must show that counsel's

performance, considering the totality of the circumstances, fell below an objective standard of reasonableness. If successful, the court moves to the second prong of deciding whether there was prejudice. *James*, 319 Kan. at 190-91.

Beltz' assertion that Patty was ineffective for failing to brief "various ineffective assistance of counsel claims" fails for the same reason his claims against Garcia fail. The assertion is conclusory and speculative, and it fails to even allege that Beltz was prejudiced by the alleged deficient performance. Moreover, the assertion that Patty failed to brief "the fact the State committed prosecutorial misconduct" would not have resulted in any relief because prosecutorial misconduct is a trial error that could be addressed only in the direct appeal. We need not spend any more time on these assertions.

This brings us to Beltz' assertion that Patty provided ineffective assistance of appellate counsel because, for whatever reason, she did not brief the newly discovered evidence claim based on Winn's affidavit attached to the first K.S.A. 60-1507 motion. Significantly, Beltz' first K.S.A. 60-1507 motion was filed in time for Beltz to assert a substantive claim of actual innocence. The district court allowed Beltz to amend his motion to add the claim of newly discovered evidence, but it denied the claim without holding an evidentiary hearing. The question becomes whether the district court in the prior case should have held an evidentiary hearing on the claim, and if so, could Patty have received relief on the claim had she raised the issue on appeal?

The landmark case for whether to grant an evidentiary hearing on a substantive claim of actual innocence is *Moncla*, 285 Kan. at 839-40. Moncla argued in a K.S.A. 60-1507 motion that the district court construed as a motion for new trial, that he was actually innocent based on allegations that several witnesses would testify to facts not in the record that tended to show his innocence. The district court denied Moncla an evidentiary hearing on his claims. Our Supreme Court disagreed and provided the

14

following factors for courts to consider in deciding whether such claims require an evidentiary hearing:

> "(1) whether the motion alleges facts which do not appear in the original record which, if true, would entitle Moncla to relief; (2) whether the motion adequately identifies readily available witnesses whose testimony would support these new facts and demonstrate that Moncla should receive a new trial; and (3) whether Moncla's newly discovered evidence could have been produced at his trial through the exercise of reasonable diligence." 285 Kan. at 840.

Applying these factors to Beltz' case, he has a viable claim that he should have received an evidentiary hearing in his prior K.S.A. 60-1507 case based on newly discovered evidence. First, Beltz has provided evidence which, if true, would entitle him to relief. If Beltz in fact withdrew from the drug transaction before any of the parties entered his house on the day Betts was killed, this evidence would have at least provided him with a defense to the underlying charge supporting the felony murder conviction. Second, Beltz has identified a readily available witness to support the new facts, Winn. Third, Beltz has at least asserted that the new evidence could not have been produced at trial because Winn was invoking his Fifth Amendment right against self-incrimination. Even if there is some question about whether Beltz is entitled to relief, the *Moncla* court found "[t]he merits of these claims must await an evidentiary hearing." 285 Kan. at 841. In sum, Beltz has asserted grounds that would have provided a legal avenue of relief for his claim that he should have received an evidentiary hearing based on newly discovered evidence in his first K.S.A. 60-1507 motion, had Patty raised the issue on appeal.

The district court's finding that Beltz cannot show prejudice because the trial evidence was overwhelming is flawed. Yes, there was evidence at trial that Beltz originally allowed the drug sale in his house and was going to act as a lookout. But none of that evidence changes the fact that if Beltz withdrew from the attempted drug deal before committing any overt act, this evidence would have provided him with a defense

15

to the underlying charge supporting the felony murder conviction. See *State v. Gobin*, 216 Kan. 278, 282, 531 P.2d 16 (1975) (holding that to convict an accused of an attempted crime an overt act extending beyond mere preparation must be established). Much of the information in Winn's affidavit is new evidence that was not presented at trial. It appears the district court in the prior K.S.A. 60-1507 motion may have erred in dismissing this claim without an evidentiary hearing. As a result, Beltz' second K.S.A. 60-1507 motion presents a "'potentially substantial issue'" on his claim that Patty was ineffective for failing to brief the issue on appeal. See *Adams*, 311 Kan. at 577-78.

Based on the arguments presented on appeal, the district court did not err in summarily denying all but one claim Beltz raised in his second K.S.A. 60-1507 motion. But the motion, files, and records of the case do not *conclusively* show that Beltz is not entitled to relief on his claim that Patty, his appellate counsel in his prior postconviction motion, was ineffective for failing to brief Beltz' claim of actual innocence based on newly discovered evidence. On this one claim, we reverse the district court's summary dismissal and remand for further proceedings. On remand, the district court shall appoint legal counsel for Beltz if he requests it and shows that he remains indigent. See K.S.A. 22-4506(b). The State may respond to Beltz' motion, and the district court will at least schedule a preliminary hearing to decide whether a full evidentiary hearing is required under K.S.A. 2024 Supp. 60-1507(b). See *Adams*, 311 Kan. at 577-78.

Affirmed in part, reversed in part, and remanded with directions.