NOT DESIGNATED FOR PUBLICATION

No. 125,475

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALTON TURNER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed November 9, 2023. Affirmed.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., MALONE and WARNER, JJ.

PER CURIAM: A jury convicted Dalton Turner of aggravated sexual battery related to events occurring during a pool party at his home. On appeal, Turner argues the State's evidence was insufficient to show the victim was overcome by force or fear despite her testimony that Turner backed her up against the pool wall and touched her buttocks and breast while they were alone in his pool. After review, we find Turner's arguments unpersuasive because his arguments largely ask us to reweigh the evidence, resolve evidentiary conflicts in his favor, and reassess witness credibility. But none of these actions are within our purview as an appellate court. We affirm Turner's conviction.

1

On May 31, 2020, Turner threw a party at his home to celebrate the work promotion of his friend, Daniel Taylor. In addition to Turner and Taylor, the celebration included: the victim, who was Taylor's 19-year-old then-girlfriend; Turner's friends, Tanner Rothe and Nick Reif; and Turner's wife, Kori Turner.

Taylor and the victim brought food and alcohol to Turner's home with plans to grill and hang out with their friends. During the party, multiple people were gathered in Turner's pool, including the victim and Turner. While hanging in and around the pool, Turner twice playfully tossed, or pushed, the victim by picking her up under the arms and throwing her into the deep end of the pool. Initially, neither Taylor nor the victim thought Turner's behavior was inappropriate. However, the victim told Turner he did not "need to do that" and tried to "play it off" by "going back to the shallow end."

The following events alleged by the victim resulted in the State ultimately charging Turner with multiple crimes. At the trial, the victim testified Turner were alone in the pool after Taylor went inside to prepare food in the kitchen. The victim testified she became uncomfortable with Turner's behavior when he inappropriately touched her while attempting to lift her and toss her. She stated when Turner threw her in the pool the first two occasions, he picked her up by her armpits. But on the third occasion, Turner put one hand on her waist and one hand underneath the bottoms of her swimming suit, making skin-to skin contact. The victim testified she told Turner to stop because that was when his behavior became inappropriate.

The victim testified that Turner did not stop, but instead, he pushed her up against the pool wall closest to the house as she attempted to reach the pool's stairs to exit. With her back to the wall, Turner touched her and refused to allow her to leave despite the victim requesting he stop his behavior multiple times. The victim testified Turner

attempted to kiss her and told her she "liked it." When the victim asked him to stop again, Turner told her she "wanted it." During the interaction, Turner put his hands inside her swimsuit top, touching her breast, and then inside the front of her swimsuit bottoms. The victim testified Turner "put his finger inside of [her]."

She further testified she was unable to push Turner away, despite her attempts. And his behavior only stopped when someone returned to the backyard. Turner then stepped away from her and she was able to exit the pool.

After exiting the pool and covering herself with a towel, the victim texted Taylor and told him about Turner's inappropriate behavior. Taylor confronted Turner, punched him, and rendered him unconscious. Taylor and the victim then left Turner's home in a rush, leaving behind their food, beverages, and the victim's purse.

After regaining consciousness, Turner punched a mirror, lacerated his hand, and was taken to the hospital by emergency medical services. Having been informed of his departure, the victim and Taylor returned to Turner's home to retrieve their belongings. The victim went to the Haysville police station later that night and filed a report regarding Turner's behavior. Detective Brady Simmons with the Haysville Police Department conducted the interview and later testified the victim appeared quiet, nervous, and "lost."

The next morning, Turner texted Taylor:  "Hey bro, give me a call tonight. I know there's nothing I can say, but I do want to apologize." Turner was arrested sometime that day.

The State charged Turner with one count of rape, in violation of K.S.A. 2019 Supp. 21-5503(a)(1)(A), (b)(1)(A), and one count of aggravated sexual battery, in

violation of K.S.A. 2019 Supp. 21-5505(b)(1). Nearly two years later, the district court held a two-day jury trial on the charges.

At trial, the jury heard testimony from every person at the party, as well as the testimony of the reporting officer and Detective Simmons. In his defense, Turner testified he could not recall anything from the night of the party. And he texted Taylor after finding out they fought at the party. Turner's wife, Rothe, and Rief all testified the victim was never alone in the pool with Turner, they were never close to one another, and none of them heard the victim say "no," "don't," or "stop."

After the close of evidence and two days of deliberation, the jury ultimately acquitted Turner of the rape charge but found him guilty of aggravated sexual battery. A few days later, the district court sentenced Turner to 32 months' imprisonment but suspended the sentence upon Turner's compliance with an ordered 36 months' probation.

Turner appeals.

DOES SUFFICIENT EVIDENCE SUPPORT THE GUILTY VERDICT?

On appeal, Turner argues the State did not present sufficient evidence to support the jury's finding that he was guilty of aggravated sexual battery under K.S.A. 2019 Supp. 21-5505(b)(1). He contends the State failed to carry its burden because it did not present evidence to support at least one factor of the crime and its evidence on the other elements was "incredible."

When considering a challenge to the sufficiency of the evidence, this court reviews the evidence "'in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). And particularly relevant to

4

Turner's argument on appeal, this court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. 313 Kan. at 209. To the extent resolution of this issue requires statutory interperion, appellate courts exercise unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

As noted, the State charged Turner with aggravated sexual battery under K.S.A. 2019 Supp. 21-5505(b)(1), which requires the State prove that a defendant committed a sexual battery when the victim "is overcome by force or fear." Consistent with the statute, the district court instructed the jury that it could convict Turner of aggravated sexual battery if the State proved the following:

> "1.  The defendant touched [the victim] with the intent to satisfy the sexual desires of the defendant or another.
> "2.  At the time of touching, [the victim] was 16 or more years of age.
> "3.  The touching was committed without the consent of [the victim] under circumstances when she was overcome by force or fear.
> "4.  This act occurred on or about the 31st day of May 2020 in Sedgwick County, Kansas."

The district court also instructed the jury that "[t]he State must prove that the defendant committed aggravated sexual battery intentionally." And the instructions defined intent as:  "A defendant acts intentionally when it is in the defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State."

Preliminarily, we find that much of Turner's argument is not persuasive because it requires this court to reweigh the evidence, resolve evidentiary conflicts, and reassess witness credibility. See *Aguirre*, 313 Kan. at 209.

For example, Turner argues the "testimony was in conflict regarding whether [he] ever touched A.F. on her breasts or buttocks, or if he had, how it occurred." But even assuming such conflict exists, this court has no such power to resolve evidentiary conflicts. As the triers of fact, the jury must have resolved such conflict in favor of the victim's testimony stating Turner did touch her breast and buttocks. We do not disturb such factual findings on appeal.

Turner also suggests we reweigh the evidence by explaining the alleged inappropriate touching was "inadvertent." He argues that "[n]one of the other individuals at the pool party . . . saw any inappropriate touching" and if there had been such actions, the other people must have seen it. Turner piecemeals short sections of the victim's testimony to argue her explanation about how Turner touched her breast "made no sense."

But again, these arguments improperly reweigh the evidence, improperly resolve evidentiary conflicts, and improperly reassesses witness credibly. See *Aguirre*, 313 Kan. at 209. And contrary to Turner's argument, the State presented sufficient evidence to support the jury's finding that Turner inappropriately touched the victim when the two were alone in the pool. The victim testified as much, and the jury must have believed her testimony to be more credible than he attempts to demonstrate on appeal. For example, Rothe testified Turner and the victim were never alone together. Using this testimony, Turner claims Rothe would have seen any inappropriate touching. But this argument assumes Rothe's testimony is more credible than the victim's testimony—a determination this court does not reassess. And as a result, Turner has not shown the State's evidence was insufficient.

Apart from his attempts to reweigh the evidence and reassess witness credibility, Turner is left with challenging the State's evidence showing the victim was overcome by force or fear. He argues the State presented no evidence "regarding [the victim] being

forced into submitting to an illicit touch, or that such a touch occurred only as a result of fear." But to make his argument, he reassesses the victim's credibility and reweighs the evidence to suggest the victim was not afraid because (1) she did not tell Turner to stop after the first and second times he tossed her in the pool, and (2) "[i]f [the victim] had been in fear, she could have swum to the ladder in the pool, or simply climbed out."

The Kansas Supreme Court has recognized that "force or fear" is a "highly subjective concept that does not lend itself to definition as a matter of law." *State v. Tully*, 293 Kan. 176, 198, 262 P.3d 314 (2011). The concept of fear is subjective because "[w]hat renders one person immobilized by fear may not frighten another at all." *State v. Borthwick*, 255 Kan. 899, 913, 880 P.2d 1261 (1994).

But our Supreme Court has provided some guidance for considering the statutory terms of "force" and "overcome." Related to "force," the Kansas Supreme Court has stated:

> "The 'force' required to sustain a rape conviction in this state does not require that a rape victim resist to the point of becoming the victim of other crimes such as battery or aggravated assault. K.S.A. 21-3502 [now K.S.A. 2022 Supp. 21-5503] does not require the State to prove that a rape victim told the offender she did not consent, physically resisted the offender, and then endured sexual intercourse against her will. It does not require that a victim be physically overcome by force in the form of a beating or physical restraint. It requires only a finding that she did not give her consent and that the victim was overcome by force or fear to facilitate the sexual intercourse." 255 Kan. at 914.

To "'overcome'" means "'to get the better of'" and "'to affect or influence so strongly as to make physically helpless or emotionally distraught.'" *State v. Brooks*, 298 Kan. 672, 691, 317 P.3d 54 (2014) (quoting from Webster's Third New International Dictionary 1607 [1993]). In other words, "'overcome'" is synonymous with the terms "'overpower,' 'conquer,' and 'subdue.'" 298 Kan. at 691.

7

Significantly, our Supreme Court held that the reasonableness or existence of the fear is a question for the fact-finder. *Brothwick*, 255 Kan. at 913-14; see also *State v. Bishop*, No. 118,896, 2019 WL 2398044, *1, 7-11 (Kan. App. 2019) (unpublished opinion) (finding sufficient evidence that the victim was overcome by force or fear based on being afraid that the defendant would end his relationship with her mother and leave the family if she did not agree to his demands).

This court can consider both direct and circumstantial evidence to determine whether an element of the crime is supported by substantial competent evidence. *State v. Colson*, 312 Kan. 739, 749-50, 480 P.3d 167 (2021).

> "This court has also recognized that there is no distinction between direct and circumstantial evidence in terms of probative value. 'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.' [Citations omitted.]" 312 Kan. at 750 (quoting *State v. Potts*, 304 Kan. 687, 694, 374 P.3d 639 [2016]).

Notably, to be sufficient, circumstantial evidence "'need not rise to that degree of certainty which will exclude any and every other reasonable conclusion.'" *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016) (quoting *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 551, 431 P.2d 518 [1967]).

Although Turner frames this issue as a challenge to the lack of sufficient evidence, his argument reassesses the reasonableness or existence of the victim's fear. And given the holding in *Borthwick*, Turner's argument is not persuasive because whether the victim's fear existed or was reasonable was a question for the jury that we do not disturb on appeal. 255 Kan. at 913-14.

But in any event, sufficient evidence provided by the victim's testimony supports the jury's finding that the victim was overcome by force or fear when Turner inappropriately touched her. The victim testified she told Turner to stop after he made skin-to-skin contact with her buttocks while attempting to pick her up in the pool when they were alone. She then tried to reach the pool wall because she is "not the best swimmer" when Turner pushed her back up against the pool wall. She told Turner to stop multiple times when he squeezed her breast, put his hand inside her swimming suit bottom, and refused to allow her to move. Turner did not stop, would not allow her to move away from him to exit the pool, and told her she "liked it" and "wanted it" when he attempted to kiss her. The victim testified she could not touch the bottom of the pool very well and was unable to push Turner away. Turner was bigger and he had her pinned against the pool wall. And his behavior concluded only when another person walked outside.

Taylor's testimony supported the victim's account of the events. Taylor testified that while in the kitchen, he saw Turner walk the victim "back up to the back wall" of the pool. Turner was "closer than he probably should have been." And after seeing the victim climb out of the pool, Taylor went outside to check on her because she seemed uncomfortable. "Her body was stiff. She seemed just irritated."

The State also presented evidence of the victim's emotional state immediately following her exit from the pool. The victim testified that after the event, "all [she] did was cry for a while." The victim's brother, who she called that night, testified the victim sounded sad and frightened when they spoke over the phone. And Detective Simmons testified that during their interview that night, the victim seemed "lost." She was quiet, nervous, and spoke quickly.

On review of this evidence, we find the State offered sufficient evidence for a reasonable fact-finder to conclude the victim was overcome by force or fear when Turner

9

inappropriately touched her, despite her requests for him to stop. The jury heard the same evidence and the same arguments that Turner now asks us to reweigh on appeal, and the jury—the appropriate fact-finder—was not persuaded.

Affirmed.